SCHOCK, F.K.A. SHEPPARD, APPELLEE, *v.*
SHEPPARD, APPELLANT.

(No. L-82-157—Decided October 1, 1982.)

*Ms. Joyce Schock, pro se.*
*Mr. Charles Cobau,* for appellant
Keith T. Sheppard.

CONNORS, P.J. This cause comes on appeal from the Court of Common Pleas of Lucas County, Domestic Relations Division, wherein appellant, Keith T. Sheppard, was found to be in contempt of court and was sentenced to a term of imprisonment.

The record and the agreed statement of facts show that appellee, Joyce Schock, filed a motion to modify child support and for a lump sum judgment for arrearages. Appellant appeared at the hearing without counsel. The attorney for appellee inquired of the referee whether counsel would be provided for appellant. The referee stated that counsel would not be provided. The referee and the parties then appeared before the trial judge who found appellant to be in contempt of the court's former support order and sentenced him to ten days in jail. The court also advised appellant he could avoid the balance of his sentence if he could pay $500 towards his support arrearages. The motion to modify support and for lump sum judgment was continued to a later date. A deputy sheriff was then summoned and appellant was taken to the jail. From the judgment of the trial court, appellant now appeals.

Appellant's first assignment of error states that:

"The trial court erred in failing to advise the appellant of his right to counsel and to provide counsel if he were indigent."

Appellant contends that the constitutional right to due process requires that a defendant charged with contempt for nonpayment of child support be advised of his right to counsel and his right to have court-appointed counsel, if indigent.

Federal courts, interpreting the United States Constitution, have held that the defendant in such a case is entitled to counsel. In *Mastin* v. *Fellerhoff* (S.D. Ohio W.D. 1981), 526 F. Supp. 969, the court held at 973 that:

"[A] state may not deprive a person of his physical liberty unless that person is represented by counsel, no matter what the nature of the proceedings."

Therefore, the practice of the Domestic Relations Court of incarcerating indigent persons for contempt without appointing counsel to represent them violated due process for those persons. It appears that the district court in *Fellerhoff* enforced its decision by enjoining the local courts from incarcerating indigent contemnors where counsel was not provided.

In *Young* v. *Whitworth* (S.D. Ohio W.D. 1981), 522 F.Supp. 759, 766, the court held that:

"[W]hen an indigent father is faced

with imprisonment on contempt charges for non-support counsel must be provided to him."

The court determined that due process required appointment of counsel. *Id.*

Federal circuit courts, which have had the opportunity to address the issue, have held that the right to counsel must be extended to contempt proceedings, be they civil or criminal, where the defendant is faced with the prospect of imprisonment. *In re Di Bella* (C.A. 2, 1975), 518 F. 2d 955, 959; *United States* v. *Sun Kung Kang* (C.A. 9, 1972), 468 F. 2d 1368; *In re Kilgo* (C.A. 4, 1973), 484 F. 2d 1215; *Henkel* v. *Bradshaw* (C.A. 9, 1973), 483 F. 2d 1386; *United States* v. *Anderson* (C.A. 8, 1977), 553 F. 2d 1154.

Both *Whitworth* and *Fellerhoff* relied upon *Lassiter* v. *Dept. of Social Services* (1981), 452 U.S. 18, wherein the court held at 26-27, with regard to what the "fundamental fairness" requirement of the Due Process Clause means concerning the right to appointed counsel, that there is a "presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty."

The holding in *Lassiter* was based upon a line of Supreme Court precedents which all indicate that when an indigent litigant may be deprived of his or her liberty, the Constitution requires appointment of counsel. The most significant aspect of *Lassiter* to the case at bar is the fact that the deprivation of the indigent's liberty is the deciding factor in requiring counsel and not whether the proceedings were criminal or civil. *Id.* at 26.

While this court is not bound by the district court holdings in *Fellerhoff* and *Whitworth,* we do give deference to their interpretation of the Due Process Clause of the United States Constitution. We are, however, bound by decisions of the United States Supreme Court and, accordingly, we must apply the presumption of *Lassiter*.

At this point, we turn to the case law in Ohio. Both *In re Calhoun* (1976), 47 Ohio St. 2d 15 [1 O.O.3d 10], and *Retz* v. *Retz* (1978), 62 Ohio App. 2d 158 [16 O.O.3d 341], indicate that due process does not require that counsel be provided to the indigent civil contemnor facing imprisonment for nonpayment of child support. However, both of these opinions were written prior to the United States Supreme Court's decision in *Lassiter*. Accordingly, we must examine appellant's due process rights in light of *Lassiter*.

*Lassiter* requires us to apply a balancing test. 452 U.S. at 27. The following three factors must be balanced against each other: (1) the private interest that will be affected by the official action (appellant's liberty interest); (2) the risk that the procedures used will lead to erroneous decisions; and (3) the government's interest, including the fiscal and administrative burdens that appointment of counsel in such cases would entail. *Id.; Mathews* v. *Eldridge* (1976), 424 U.S. 319, 335. *Lassiter* requires us to "balance these elements against each other, and then set their net weight in the scales against the presumption that there is a right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom." 452 U.S. at 27.

The first factor weighs heavily in favor of appellant. As stated in *Young* v. *Whitworth,* "[t]he concept of physical liberty is at the heart of democracy." 522 F. Supp. at 762. Indeed, the concept of physical liberty is one of the most fundamental private interests protected by the United States Constitution. The importance of physical liberty is evidenced by the fact that the presumption of a right to counsel created by *Lassiter* arises only where there is any possibility that the defendant may be deprived of his physical liberty.

The second factor also weighs in favor of appellant. We are of the opinion that the potential for erroneous deprivation of a defendant's liberty, in a case such as the one at bar, rises dramatically when the

defendant is not represented by counsel. As the court stated in *Powell* v. *Alabama* (1932), 287 U.S. 45, 69:

"Even the intelligent and educated layman has small and sometimes no skill in the science of law. * * * He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence * * *. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect."

The potential for erroneous deprivation of a defendant's liberty is aptly illustrated by the case at bar where, as will be discussed under appellant's second assignment of error, the appellant was placed in jail for contempt but never given prior notice that contempt charges would be brought at the hearing.

The third factor to be weighed is the government's interest, including the fiscal and administrative burdens that would be created if counsel must be provided for indigent civil contemnors. As the court recognized in *Young* v. *Whitworth*, the fiscal and administrative burdens that will be created will be heavy. 522 F. Supp. at 763. In addition, the government has a significant interest in providing support for minor children and in having court support orders enforced. However, requiring the appointment of counsel in contempt proceedings will not hinder these government interests. The only significant factor which weighs against appointment of counsel in these cases is the money it will cost to administer the appointment of counsel and to pay for the services of appointed counsel.

Balancing the three factors discussed above, and setting their net weight in the scales against the presumption that counsel should be appointed in cases where the defendant may lose his personal freedom, we conclude that the balance weighs overwhelmingly in favor of the indigent defendant's right to court-appointed counsel. We are cognizant of the fiscal burdens this will place on the government, but constitutional rights cannot be nullified simply because of the expense involved in ensuring that such rights are protected.

In light of the foregoing, we hold that a defendant who faces contempt charges for nonpayment of child support, with the possibility of a prison sentence being imposed, must be informed of his right to counsel. If said defendant is indigent, counsel must be provided at the state's expense. Appellant's first assignment of error is, therefore, found to be well-taken.

Appellant's second assignment of error states that:

"The trial court erred in finding the appellant guilty and sentencing him for contempt when no charge was ever leveled against him."

The record shows that appellant was summoned to appear before the court pursuant to appellee's motion to modify child support and for a lump sum judgment. It is clear that appellant was given no notice that contempt proceedings would be brought against him. It is also clear that the contempt charge was not based on misbehavior in the presence of the court, R.C. 2705.01, but on appellant's failure to comply with court-ordered child support, R.C. 2705.02. The contempt charge being under R.C. 2705.02, the trial court erred in not complying with the requirement of R.C. 2705.03 that appellant be given notice of the charge in writing. See, also, *Culberson* v. *Culberson* (1978), 60 Ohio App. 2d 304 [14 O.O.3d 265]; *Cincinnati* v. *Cincinnati District Council 51* (1973), 35 Ohio St. 2d 197 [64 O.O.2d 129].

Accordingly, appellant's second assignment of error is found to be well-taken.

On consideration whereof, the court finds that substantial justice was not afforded the party complaining, and judgment of the Court of Common Pleas of Lucas County, Domestic Relations Division, is reversed and vacated. Cause remanded for assessment of costs against appellee.

*Judgment reversed.*

DOUGLAS and BARBER, JJ., concur.